IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RITA J. CINDRICH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | )   Civil Action No. 05-1348 |
| | ) |
| MICHAEL FISHER, in his former capacity as | ) |
| Attorney General and individually, et al., | ) |
| | ) |
| | ) |
| Defendants. | ) |

AMBROSE, Chief District Judge.

## OPINION and ORDER OF COURT

### SYNOPSIS

Defendants have filed a Motion for Summary Judgment.  (Docket No. 10).

Defendants move for summary judgment as to: 1) Count One because Plaintiff was

not a whistleblower under Pennsylvania law and because no actions were taken

against her because of any whistleblowing activity; 2) Counts Two and Three

because: a) Plaintiff's speech was not protected by the First Amendment, b) her

disruptiveness outweighs any First Amendment rights she might have, and c) any

claims arising prior to December 15, 2005, are barred by the doctrine of issue

preclusion; and 3) Counts Four, Five, and Six based on immunity.  (Docket No. 39).

After careful consideration of the submissions of the parties, said Motion (Docket

No. 39) is granted in part and denied in part, as set forth more fully below.

I. BACKGROUND

This is an action brought by Plaintiff, Rita Cindrich, a former employee of the Pennsylvania Office of Attorney General ("OAG"), against several current and former officials of the Office of Attorney General. (Docket No. 1).  Defendants had filed a Motion to Dismiss Plaintiff's Amended Complaint.  I granted in part and denied in part the Motion.  (Docket No. 18).  Specifically, I granted Defendants' Motion to Dismiss Plaintiff's §1983 First Amendment retaliation claims based on Eleventh Amendment immunity as to Defendants sued in their official capacity, but denied as to Defendants sued in their individual capacities; I granted the Motion to Dismiss Plaintiff's Whistleblower claims based on the 180 day statute of limitations such that all whistleblower claims occurring before April 1, 2005, were dismissed with prejudice; and I granted Defendants' Motion to Dismiss Plaintiff's §1983 First Amendment retaliation claims based the two year statute of limitations such that all First Amendment retaliation claims occurring prior to September 28, 2003, are dismissed with prejudice.  (Docket No. 18).  Thereafter, Plaintiff filed her Second Amended Complaint.  (Docket No. 28).  The Second Amended Complaint asserts six causes of action: 1) Violation of Pennsylvania's Whistleblower Law, 43 P.S. §1422, et seq.;  2) Violation of the First Amendment to the United States Constitution; 3) Retaliation in violation of the First Amendment; 4) Defamation; 5) Civil Conspiracy; and 6) Intentional Infliction of Emotional Distress).  *Id.*

Defendants have filed a Motion for Summary Judgment as to all Counts. (Docket No. 39).  After briefing by the parties, the issues are now ripe for review.

2

## II. LEGAL ANALYSIS

### A. STANDARD OF REVIEW

Summary judgment may only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must examine the facts in a light most favorable to the party opposing the motion.  *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946, 949 (3d Cir. 1990).  The burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact.  *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987).  The dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material when it might affect the outcome of the suit under the governing law.  *Id.*  Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be

insufficient to carry the non-movant's burden of proof at trial.  *Celotex*, 477 U.S. at

322. Once the moving party satisfies its burden, the burden shifts to the nonmoving

party, who must go beyond its pleadings, and designate specific facts by the use of

affidavits, depositions, admissions, or answers to interrogatories showing that there

is a genuine issue for trial.  *Id*. at 324.   Summary judgment must therefore be

granted "against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial."  *White v. Westinghouse Electric Co.*, 862 F.2d 56,

59 (3d Cir. 1988), *quoting, Celotex*, 477 U.S. at 322.

B.   <u>IMMUNITY</u>

The first issue raised by Defendants is immunity.   (Docket No. 40, p. 5).

Specifically, Defendants argue that summary judgment should be entered in their

favor as to Counts Four, Five, and Six, because "Pennsylvania officials and employees

acting within the scope of their duties are immune from suit for state law violations

except as specifically waived by the General Assembly."  *Id.*, *citing*  1 Pa. C.S. §2310.

 Section 2310 provides, in pertinent part, as follows: "Pursuant to section 11 of

Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent

of the General Assembly that the Commonwealth, and its officials and employees

acting within the scope of their duties, shall continue to enjoy sovereign immunity

and official immunity and remain immune from suit except as the General Assembly

shall specifically waive the immunity."  1 Pa. C.S. §2310.  Defendants continue that

since immunity has only been waived in nine narrow areas, 42 Pa. C.S. §8522(b),[1] none of which include claims for defamation, civil conspiracy, or intentional infliction of emotional distress, and Plaintiff did not allege that Defendants acted outside the scope of their employment, immunity as to said Counts of the Second Amended Complaint should be recognized. *Id.*

In opposition, Plaintiff argues that Defendants are not immune from Counts Four, Five, and Six. (Docket No. 46, pp. 15-16). Specifically, Plaintiff argues that immunity for government employees is waived for those who cause injury through willful misconduct. *Id.* at 16, *citing,* 42 Pa. C.S.A. §8550.[2] Section 8850, however, applies only to local agency employees and not Commonwealth employees. 42 Pa. C.S.A. §8550; *See Yakowicz v. McDermott*, 120 Pa.Cmwlth. 479, 548 A.2d 1330, 1333 & n. 5 (Pa. Commw. 1988), appeal denied, 523 Pa. 644, 565 A.2d 1168 (Pa. 1989)(noting that Commonwealth employees are immune from liability even for intentional torts but that local agency employees lose their immunity defense where their actions constitute a crime, actual fraud, actual malice or willful misconduct); 21 Standard

---

[1]Section 8522 waives immunity in the following instances: 1) Vehicle liability; 2) Medical-professional liability; 3) Care, custody or control of personal property; 4) Commonwealth real estate, highways and sidewalks; 5) Potholes and other dangerous conditions; 6) Care, custody or control of animals; 7) Liquor store sales; 8) National Guard activities; 9) Toxoids and vaccines. 42 Pa.C.S.A. § 8522(b).

[2]Section 8550 provides as follows:

In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S.A. § 8550.

Pennsylvania Practice 2d § 114:58 (June 2006).

Plaintiff further asserts that the conduct alleged against Defendants is outside the scope of their official duties and, thus, there is no immunity. *Id.* In support of the same, Plaintiff points me to section F of her brief. (Docket No. 46, p. 16). A review of section F, however, does not reveal in any way that Defendants acted outside their scope of employment. *See,* Docket No. 46, pp. 8-10. All acts discussed by Plaintiff in section F are acts that occurred within the employment setting and are within a supervisor's responsibilities.

Plaintiff also suggests that it cannot be within their scope of employment to conspire to terminate Plaintiff. (Docket No. 46, p. 16). Allegations in her Second Amended Complaint against Defendants in their individual capacities alone, however, are insufficient at this stage to create a genuine issue of material fact. Additionally, Defendants in their official capacity are agents of a single entity and, therefore, cannot conspire among themselves. *See, Grose v. Procter & Gamble Paper Products,* 866 A.2d 437, 441 (Pa. Super. 2005)(agents of a single entity cannot conspire among themselves). Consequently, I find Defendants are entitled to immunity. Therefore, summary judgment in favor of Defendants as to Counts Four, Five, and Six is warranted.

C.  <u>DEFENDANTS FISHER, PAPPERT, AND MINAHAN, AND PLAINTIFF'S PSYCHOLOGICAL EVALUATION IN 2003</u>

As to the remaining claims (Whistleblower Law and First Amendment retaliation), Defendants argue that Defendants Fisher, Pappert, and Minahan should be dismissed from the case because nothing any of these Defendants did during the

relevant time period constitutes a violation of her rights.  (Docket No. 40, pp. 5-6).

To reiterate, there can be no Whistleblower claims prior to April 1, 2005 and no First

Amendment claims prior to August 28, 2003.  *See,* Docket No. 18.  Defendant Fisher

was the Attorney General ("AG") from January 21, 1997, until December 15, 2003.

Defendant Pappert assumed the duties of the AG upon Fisher's resignation and was

sworn in as AG on February 2, 2004.  Before serving as AG, Pappert was the First

Deputy AG during Fisher's tenure as AG.  Defendant Minahan served as Executive

Deputy AG of the Western Regional Office of the OAG from February 13, 1997 until

his retirement on February 11, 2005.  Defendants point out that none of these

Defendants were employees of the OAG at the time of Plaintiff's termination[3] and

argue that Plaintiff has failed to identify any rights that these Defendants allegedly

violated.  (Docket No. 40, pp. 5-6).

In opposition, Plaintiff first argues that the Defendants should not be

dismissed because "Defendants' position is incomplete and without factual support

in the context of the entire case."  (Docket No. 46, p. 14).  To support her position

Plaintiff merely cites to her own declaration.  Specifically with regard to Fisher,

Plaintiff's two sentence argument is that she had a meeting with Fisher in May of

2003 during which she voiced her concerns about the *Laubach* case and Fisher failed

to take any action on Plaintiff's behalf.  (Docket No. 46, p. 15).  As cited above,

anything that occurred in May of 2003 is time barred for Plaintiff's Whistleblower

claim and First Amendment claims.  Thus, I find that Fisher should be dismissed as

---

[3]Fisher resigned as AG on December 15, 2003.  Pappert was replaced as AG on January 18, 2005.
Minahan retired on February 11, 2005.

a Defendant.

With regard to Pappert, Plaintiff's conclusory two sentence argument is that he should remain as a Defendant because "he was aware of Plaintiff's reports and her interactions with her more immediate supervisors through a large amount of information conveyed by e-mails." (Docket No. 46, p. 15). To begin with, Plaintiff's citation to her own declaration at paragraph 70, which references an e-mail from Defendant Pacella to Plaintiff dated October 23, 2002. (Docket No. 47 ¶70, citing to Defendant's Ex. 30) does not advance Plaintiff's argument. As cited above, anything that occurred in October of 2002, is time barred. Furthermore, I note that while the e-mail references Pappert, it was not sent from him or to him. *Id.* In fact, Pappert was not even copied on the e-mail. *Id.* Again, I am unable to discern what action, in particular, Plaintiff believes Pappert, in particular, engaged in or failed to engage in that violated the Whistleblower Law or Plaintiff's First Amendment rights. Thus, I find Plaintiff has failed to meet her burden at this stage of the litigation. Therefore, I find that Pappert should be dismissed as a Defendant.

With regard to Minahan, Plaintiff first argues that he was involved in implementing the April 2001 "chain of command" memo. (Docket No. 46, citing Docket No. 47, ¶¶55, 56). Again, anything that occurred in April of 2001, is time barred. Plaintiff also asserts that she believes that Minahan had "a hand in the removal of documents from her files." (Docket No. 46 p. 15, citing Docket No. 47, ¶72). A mere belief, however, is insufficient at this stage of the litigation to infer anything. Furthermore, the documents used to support her belief indicate that this

8

event occurred in 2002, again, a time-barred event.   (Docket No. 47, citing to Defendant's Ex. 30).   Plaintiff further asserts that "Minahan would be more than willing to transfer her if she continued her habit of reporting wrongdoing." (Docket No. 46 p. 15, citing Docket No. 47 ¶98).   Paragraph 98 references an e-mail between Defendant Pacella and Defendant Palmer dated March 29, 2003, within which Defendant Palmer states that "he is sure that Mr. Minahan would be pleased to reassign [Plaintiff] to another unit."   (Defendant Ex. No. 43).   Again, this action, occurring in March of 2003, is time-barred.   Furthermore, I note that there is no evidence that Minahan was copied on this e-mail or was even aware of any discussion regarding reassignment of Plaintiff.   Plaintiff also indicates that she witnessed a female employee crying out of fear because of an encounter with Minahan." (Docket No. 46, p. 15, Citing Docket No. 47, ¶143.   I am not persuaded that witnessing a female employee crying "out of fear because of an encounter with Minahan" has anything to do with a violation of her First Amendment rights or the Whistleblower Law.

Plaintiff, however, does state that "Minahan was personally aware of the issues surrounding Plaintiff's employment because of a meeting he attended in September 2003." (Docket No. 46, p. 15, citing Docket No. 47, ¶120).   Paragraph 120 indicates that on September 29, 2003, Minahan attended a meeting wherein Plaintiff was ordered to take an immediate two week leave of absence to be evaluated by a psychologist. *Id.*   Thus, any event that occurred on September 29, 2003, is time-barred as it relates to Plaintiff's Whistleblower law claim against Minahan.   With regard to Plaintiff's First

Amendment claims, however, said claims are not time-barred.  To that end, Plaintiff argues that by ordering Plaintiff to undergo a psychological evaluation, Minahan violated her right to petition the government and to keep her from speaking out. (Docket No. 46 p. 15, citing Docket No. 47 ¶120).   Defendants assert that said issue has been previously decided by Plaintiff's first lawsuit filed in the U.S. District Court for the Middle District of Pennsylvania thus barring relitigation of that issue against any Defendant.

Issue preclusion, also known as the doctrine of collateral estoppel, applies where the following prongs are met:

> (1) An issue decided in a prior action is identical to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Jones v. United Parcel Service*, 214 F.3d 402, 406 (3d Cir. 2000), *quoting, Rue v. K-Mart Corp.*, 552 Pa. 13, 713 A.2d 82, 84 (Pa. 1998).   Plaintiff summarily argues that the "Middle District did not adjudicate, and the parties did not 'actually litigate' Defendants' liability for requiring Plaintiff to submit to a psychological evaluation in 2003." (Docket No. 46, p. 17).   Based on this conclusory statement, I assume Plaintiff is only taking issue with the second and fourth prongs of the test. Consequently, I will only address the second and fourth prongs.

On December 15, 2003, Plaintiff filed an action in the U.S. District Court for the Middle District of Pennsylvania against Michael Fisher, Thomas Palmer, Mark Pacella,

Alexis Barbieri, and Donald Minahan for, *inter alia,* a violation of Plaintiff's First Amendment rights. (Defendants' Ex. 90).  As a part of Plaintiff's Complaint, Plaintiff complained about the events occurring in her workplace, as she has here, including having been subjected to a psychological examination.  (Docket No. 90, ¶¶ 22-23). Defendants filed a Motion for Summary Judgment, and on June 28, 2005, Magistrate Judge Andrew Smyser issued a Report and Recommendation that summary judgment be granted in favor of Defendants concluding that in the balancing of interests, the disruptiveness of Plaintiff's speech outweighs the First Amendment value to that speech.   (Defendants' Ex. 91).  On February 10, 2006, Judge Conner adopted the report of the Magistrate Judge. (Defendants' Ex. 91A).  On April 6, 2006, Judge Conner denied Plaintiff's Motion for Reconsideration.  (Defendants' Ex. 92). Thus, it is evident that this issue was before the Middle District and Plaintiff had a full and fair opportunity to litigate this issue. Therefore, based on collateral estoppel, summary judgment in favor of all Defendants is warranted on the issue of Plaintiff's First Amendment claims to the extent it is premised upon Defendants' requirement that Plaintiff undergo a psychological evaluation or any other conduct by Defendants in so far as pre-December 15, 2003, events are concerned.  Additionally, based on the same, I find that the events of September 29, 2003, involving Defendant Minahan are barred based on collateral estoppel.  Thus, Defendant Minahan should be dismissed from this case entirely.

D.  <u>FIRST AMENDMENT</u>

As set forth above, Plaintiff's First Amendment claim is limited to post

December 15, 2003, conduct.  Defendants assert that Plaintiff's post December 15, 2003, and, in particular, a March 8, 2005, filing in the Somerset County Court of Common Pleas was not protected speech.  (Docket No. 40, pp. 6-8).  Defendants further assert that even if Plaintiff's speech was protected speech, her interest in doing so was outweighed by the interests of the OAG.  *Id.* at pp. 8-13.

1. <u>Protected speech</u>

To establish a First Amendment retaliation claim pursuant to §1983, a plaintiff must show:

> (1)  that [its] conduct was protected by the First Amendment, and
>
> (2)  that the defendant's conduct was motivated by or substantially caused by the plaintiff's exercise of free speech.

*Bd. of County Commissioners, Wabaunsee County, KS v. Umbehr*, 518 U.S. 668, 684 (1996); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).  The first element is a question of law and the second element is a question of fact.  *Hill v. Borough of Kutztown,*  455 F.3d 225, 241 (3d Cir. 2006).

Public employees have a right to freedom of speech. *Pickering v. Bd. of Educ.,* 391 U.S. 563 (1968); *Connick v. Myers,* 461 U.S. 138 (1983).  The First Amendment protects a public employee's right to speak as a private citizen on matters of public concern without fear of retaliation. *Baldassare v. New Jersey*, 250 F.3d 188, 194 (3d Cir.2001)

> A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the

> government employer did not have "an adequate
> justification for treating the employee differently from
> any other member of the general public" as a result of the
> statement he made. *Garcetti v. Ceballos*, --- U.S. ----, ----, 126
> S.Ct. 1951, 1958, 164 L.Ed.2d 689, ---- (2006). A public
> employee does not speak "as a citizen" when he makes a
> statement "pursuant to [his] official duties." *Id.* at 1960.
> "Whether an employee's speech addresses a matter of
> public concern must be determined by the content, form,
> and context of a given statement, as revealed by the
> whole record." *Rankin v. McPherson*, 483 U.S. 378, 384, 107
> S.Ct. 2891, 97 L.Ed.2d 315 (1987) (*quoting Connick v. Myers*,
> 461 U.S. 138, 147- 148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)).

*Id.* at 241-42.

Defendants argue that Plaintiff's March 8, 2005, filing in Somerset County was not protected speech because she was not speaking as a citizen for First Amendment purposes, but rather filing the papers as a part of her official duties. (Docket No. 40, pp. 6-8). In support of the same, Defendants cite to the case of *Garcetti v. Ceballos,* 126 S.Ct. 1951 (U.S. 2006). Therein, the plaintiff was a supervising deputy district attorney who concluded that the affidavit police used to obtain a critical search warrant was inaccurate. As a result, he informed his supervisors and followed up with a memorandum recommending dismissal. Nevertheless, his supervisors proceeded with the prosecution. At the hearing on a defense motion to challenge the warrant, the plaintiff recounted his observations about the affidavit. Thereafter, the plaintiff was allegedly subjected to a series of retaliatory employment actions. The Supreme Court of the United States held that when "public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution

does not insulate their communications from employer discipline." *Garcetti,* 126 S.Ct. at 1960.

Here, Plaintiff argues, in opposition, that *Garcetti* is distinguishable from the case at hand because Defendants did not authorize Plaintiff to file her Motion on March 8, 2005.  I disagree with Plaintiff.  The fact that Plaintiff was not authorized to file it by her superiors does not mean that Plaintiff was acting as a private citizen. To the contrary, the evidence clearly indicates that the Motion was filed as a result of Plaintiff's duty as a SDAG.  *See,* Exs. 125-133.  In fact, when Plaintiff filed the Motion, she filed it as "Counsel of Record" for the Commonwealth of Pennsylvania. (Defendants' Ex. 99, Attachment A).  As the Supreme Court pointed out, the First Amendment "does not invest [public employees] with a right to perform their jobs however they see fit." *Garcetti,* 126 S.Ct. at 1960.  If Plaintiff's superiors thought her filing on behalf of the OAG or her *ex parte* conversation with the judge on the case as the counsel of record[4] was incorrect or misguided, they had the authority to take the proper corrective employment action. *Garcetti,* 126 S.Ct. at 1960-62.

Plaintiff also attempts to distinguish this case from *Garcetti* by noting that in *Garcetti* there was essentially only one memorandum authored by the claimant that was at issue and in her case the evidence involves a much longer series of events. (Docket No. 46, p. 14).  I disagree.  To begin with, in *Garcetti, supra,* there was not just a memorandum, but also a heated meeting, and court testimony.  Furthermore, in

---

[4]According to Plaintiff's deposition, when she arrived at the courthouse in Somerset County, she talked to the judge.  (Ex. 115, pp. 44-46).  The following was the entire substance of Plaintiff's conversation with the Judge: Judge: "Are the objections prepared?" Plaintiff: "They are." Judge: "File them." *Id.* at p. 46.

this case, I am addressing only post December 15, 2003, incidents, and not the entire history of Plaintiff's employment.   Thus, I find no merit to this argument. Accordingly, I find that *Garcetti* is controlling. Consequently, I find there is no genuine issue of material fact that Plaintiff's post December 15, 2003, conduct was not as a citizen, but as a public employee performing her duties.

Plaintiff's only other argument is that *Garcetti* does not apply to free association claims.  (Docket No. 46 pp. 13-14).  I disagree.  As Plaintiff, herself, points out, the Third Circuit has recently held that an essential element of a First Amendment Claim, whether it is a freedom of speech claim or a freedom of association claim, is that the plaintiff must be acting as a private citizen.  (Docket No. 46, pp. 6-7, *citing*, *Hill v. Borough of Kutztown,* 455 F.3d 225, 241-242 (3d Cir. 2006). Plaintiff asserts that she has a First Amendment right to associate "with persons in a position to protect the public interest, such as judges."  (Docket No. 46, p. 14).  The only post-December 15, 2003, meeting with a judge or other person pointed to by Plaintiff is her meeting with the judge in Somerset County.  *See,* Docket No. 46. According to Plaintiff's deposition, the following was the entire substance of Plaintiff's conversation with the Judge:   Judge: "Are the objections prepared?" Plaintiff:  "They are."  Judge:  "File them."  (Docket No. 115, at p. 46).  As set forth above, I find that Plaintiff was acting as a SDAG when she engaged in this activity. Therefore, summary judgment in favor of Defendants as to Plaintiff's First

Amendment claims is warranted.[5]

E.  <u>WHISTLEBLOWER LAW</u>

Plaintiff's Second Amended Complaint alleges violation  of Pennsylvania's Whistleblower Law ("WL"), 43 P.S. §1422, *et seq.*  It is important to note here that I have previously ruled that all whistleblower claims based on actions taken against Plaintiff prior to April 1, 2005, have been dismissed with prejudice as time barred. Consequently, I will only consider actions that occurred on or after April 1, 2005.

Plaintiff does not allege in her Amended Complaint any action taken by Defendants occurring on or after April 1, 2005.  *See,* Docket No. 28.  In fact, the Amended Complaint asserts that her termination occurred on March 28, 2005.  *Id.* at ¶106.  In her declaration, Plaintiff again asserts that her termination occurred on March 28, 2005, and that she was not informed that if a letter of resignation was not received by April 27, 2005, that a termination letter would be issued on April 28, 2005.  (Docket No. 47, ¶¶148-149).   At this juncture, however, I must construe the facts in the light most favorable to Plaintiff.  Oddly enough, the facts as asserted by Defendant and supported by documentation, evidence that Plaintiff's notification of her termination was on April 1, 2005, effective April 29, 2005, unless they received a letter of resignation prior to April 27, 2005.  (Docket No. 41, ¶¶195-200, citing Exs. 94-96).  On April 26, 2007, Plaintiff submitted a letter of resignation.  (Docket No. 41, ¶201, citing Ex. 97).  Therein, Plaintiff states the following:

---

[5]Because I have found that summary judgment in favor of Defendants is warranted as to Plaintiff's First Amendment claims based on the finding that Plaintiff was not acting as a private citizen when she engaged in her alleged activity, I need not consider Defendants' further argument that the interests of the OAG outweigh the interests of Plaintiff.

> Please consider this letter my resignation from the position I held as a Senior Deputy Attorney General in the Charitable Trusts and Organizations Section of the Office of Attorney General.
>
> Pursuant to the directive delivered to me April 1, 2005, advising that my employment will terminate effective April 29, 2005, but that a letter of resignation would be accepted if delivered by April 27, 2005, I have been left no choice.
>
> In no way is this to be considered a voluntary resignation. Rather it is clearly a forceful separation.

*Id.* Accordingly, construing the facts in the light most favorable to Plaintiff, I find that her notification of termination and her subsequent resignation occurred on and after April 1, 2005. Thus, this alleged conduct/violation is not time-barred. Consequently, all acts alleged by Plaintiff leading up to Plaintiff's notification of termination must be considered.

Pennsylvania's WL provides, in pertinent part, as follows:

> **(a)  Persons not to be discharged.-**No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee...makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority of an instance of wrongdoing or waste.

43 P.S. §1423. Defendants summarily argue that summary judgment should be entered in their favor on Plaintiff's WL claim based on the following: 1) because Plaintiff's March 8, 2005, "filing in Somerset County was not a 'report' of wrongdoing or waste;" 2) Plaintiff's March 8, 2005, "'report' was not made in good faith;" 3) because she was terminated for insubordination; and 4) in balancing the interests,

Plaintiff's interests are outweighed by Defendants' interests.  (Docket No. 40, pp. 18-19; Docket No. 50, p. 6).   I will address each in turn.

With regard to the first issue, Defendants argue that the filing in Somerset County on March 8, 2005, was not a report of wrongdoing or waste.  *Id.*  The WL defines a "good faith report" as "[a] report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true."  43 P.S. § 1422.  "Waste" is defined as "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources."  *Id.* "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer."  *Id.*  With these definitions in hand and reviewing the filing of March 8, 2005, I find that there is no genuine issue of material fact that there is no report of "wrongdoing" or "waste" on behalf of the AG's office or any Defendants therein.  *See,* Defendants' Ex. 99, Attachment A.  Consequently, summary judgment in favor of Defendants' as to whether the filing of March 8, 2005, constitutes a report of wrongdoing or waste under the WL is warranted.[6]

In opposition, Plaintiff contends that there were various other reports of

---

[6]Because I have found that the March 8, 2005, filing was not a report of wrongdoing or waste within the meaning of the WL and that summary judgment is appropriate, I need not address Defendants' additional argument that Plaintiff's report was not made in "good faith."

wrongdoing and waste pre-2004. *See,* Docket No. 46, pp. 9-10.  Defendants do not address those various alleged reports of wrongdoing and waste. (Docket No. 40, pp. 18-19 and Docket No. 50, p. 6).  Rather, Defendants argument focuses on "post 2003" reports. *Id.*  Defendants do suggest, however, that there is no genuine issue of material fact Plaintiff was fired for anything other than insubordination.  This argument could be construed to pertain to all of the WL claims raised by Plaintiff.  In viewing the evidence in the light most favorable to Plaintiff, however, I disagree with Defendants.  Plaintiff has set forth her view of the facts that if believed by the jury could create a genuine issue as to the reason for her termination/resignation.  Therefore, I decline to grant summary judgment as to Defendant on Plaintiff's pre-2004 alleged reports of wrongdoing pursuant to the WL.

Finally, Defendants contend summary judgment should be entered in their favor on a novel theory that I should employ a balancing of interests test under a WL claim, as is done for First Amendment cases.  (Docket No. 40, p. 19).  If I am inclined to do so, Defendants assert that  summary judgment should be granted in their favor as Plaintiff's interests in whistleblowing are outweighed by Defendants interests in control over the management of personnel.  There is no case law indicating that such an analysis is warranted and I am not so inclined to extend such a requirement under the WL.  Consequently, summary judgment on this theory is denied.

There are no further federal issues pending before this Court, however.  As a result, I decline to exercise supplemental jurisdiction over Plaintiff's remaining

state law Whistleblower Law claim. 28 U.S.C. §1367.

* * * * * * * * * * * * * * * * * * * *

## ORDER OF COURT

AND NOW, this **31ˢᵗ** day of May, 2006, after careful consideration of the submissions of the parties and for the reasons set forth in the accompanying Opinion it is ordered that Defendants' Motion for Summary Judgment (Docket No. 39) is granted in part and denied in part as follow:

1. Defendants' Motion for Summary Judgment as to Counts Four, Five, and Six is granted based on immunity;

2. Defendants' Motion for Summary Judgment is granted as it relates to the dismissal of Defendants Fisher, Pappert, and Minahan;

3. Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claim in so far as pre-December 15, 2003, events are concerned, is granted based on collateral estoppel;

4. Defendants' Motion for Summary Judgment as to Plaintiff's First Amendment claims is granted as to all post-December 15, 2003, events; and

5. Defendants' Motion for Summary Judgment as to Plaintiff's Whistleblower claim as it relates to the March 8, 2005, filing in granted; however, it is denied as to all other Whistleblower claims asserted by Plaintiff.

It is further ordered that Plaintiff's remaining state law claim pursuant to Pennsylvania's Whistleblower Law is dismissed without prejudice pursuant to 28 U.S.C. §1367.  This case is closed forthwith.


BY THE COURT:



/S/   Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge